# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO:  3:16-cr-125-J-32PDB
              3:16-cr-141-J-32PDB

JOSE SALVADOR LANTIGUA   ORDER ON MOTION FOR
                         SENTENCE REDUCTION UNDER
                         18 U.S.C. § 3582(c)(1)(A)

## **O R D E R**

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.[1]

    ☒ FACTORS CONSIDERED

A movant for compassionate release bears the burden of proving that a reduction in sentence is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate). As the Third Circuit

---

[1] The Court assumes, for the sake of argument, that Defendant has satisfied the compassionate release statute's exhaustion requirement.

Court of Appeals has observed, the mere existence of Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant is a 67-year old inmate incarcerated at Ashland FCI, serving a 168-month term of imprisonment for conspiracy to commit mail and wire fraud, bank fraud, passport fraud, and aggravated identity theft. (Doc. 37, Judgment).[2] According to the Bureau of Prisons (BOP), he is scheduled to be released from prison on February 22, 2027. He claims that he suffers from high cholesterol and a degenerative eye disease; that he suffered a heart attack in 2010 for which he underwent quadruple bypass surgery; and that he was hospitalized in December 2019 for a leg infection with sepsis, which still causes swelling. However, Defendant's cholesterol appears to be controlled by lifestyle changes, his vision problems appear to be controlled by corrective lenses, and he does not appear to suffer lingering complications from his bypass surgery or leg infection (other than swelling). (See Doc. 72 at 11-12 (citing Doc. 70-1, Medical Records)). While the Court does not take these conditions or the Covid-19 outbreak lightly, the BOP has taken extensive measures to keep inmates and staff safe. Such efforts appear to have succeeded at Ashland FCI, which currently reports zero inmates (out of 1,079) positive for coronavirus.[3] Under the circumstances, Defendant has not demonstrated extraordinary and compelling reasons for

---

[2] Docket citations are to docket entries in Case No. 3:16-cr-125-J-32PDB.

[3] Data available at https://www.bop.gov/coronavirus/. The data is updated daily.

compassionate release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 & cmt. 1.

Moreover, even if Defendant had shown extraordinary and compelling circumstances, he is not eligible for compassionate release because the sentencing factors under 18 U.S.C. § 3553(a) do not support a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. After Defendant fraudulently obtained a $2 million bank loan, he lied to friends and family and perpetrated an elaborate scheme to fake his own death in order to collect life insurance benefits. The details of the elaborate plot were thoroughly recounted by the Eleventh Circuit Court of Appeals. See United States v. Lantigua, 749 F. App'x 875, 877-78 (11th Cir. 2018). The scheme involved a story about a rogue CIA agent and a drug cartel, a trip to Venezuela to obtain a fake death certificate and certificate of cremation, and Defendant paying an individual $5,000 to sneak him back into the United States from the Bahamas. Defendant ensnared his wife in the criminal scheme by convincing her to fraudulently apply for $6.6 million in life insurance benefits. After Defendant returned to the United States, he fled to his second home in North Carolina, where he lived under a false identity.

At sentencing, the Court remarked that "the perniciousness and callousness of Mr. Lantigua's actions … set this case apart" from other fraud offenses. (Doc. 52, Sentencing Transcript at 93). The Court explained: "in terms of pure evil or the willingness to involve and dupe not only your wife, but others close to you, and then others who had befriended you, … in the spectrum of frauds, it really ranks as among the more serious fraud cases I've seen." (Id.). The facts of the crime convinced the Court that a significant upward variance was required. (Id. at 96-97) The Court

determined that a sentence of 168 months' imprisonment was necessary to reflect the seriousness of the offense, provide just punishment, promote respect for the law, and afford adequate deterrence. (See id. at 85-99, 105-06).

Defendant is not scheduled to be released from prison until February 22, 2027. In view of all the § 3553(a) factors, releasing Defendant from prison six and a half years early would not be consistent with the statutory purposes of sentencing. See United States v. Rodd, 966 F.3d 740, 741-42, 747-48 (8th Cir. 2020) (district court properly denied compassionate release based on the § 3553(a) factors where defendant was convicted of fraud offenses totaling $1.8 million in losses, even though defendant suffered from congestive heart failure, hypertension, atrial fibrillation, morbid obesity, and diabetes); United States v. Pawlowski, 967 F.3d 327, 330-31 (3d Cir. 2020) (similar). Accordingly, Defendant Jose Lantigua's Motion for Compassionate Release (Doc. 65, Doc. 71) is **DENIED**.[4]

**DONE AND ORDERED** at Jacksonville, Florida this 3rd day of September, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

---

[4] To the extent Defendant requests transfer to home confinement, the Court cannot grant that request because the BOP has exclusive jurisdiction to decide which prisoners to place in the home confinement program. See United States v. Alvarez, No. 19-cr-20343-BLOOM, 2020 WL 2572519, at *2 (S.D. Fla. May 21, 2020); United States v. Calderon, 801 F. App'x 730, 731-32 (11th Cir. 2020) (a district court lacks jurisdiction to grant a request for home confinement under the Second Chance Act).

Lc 19

Copies:
Defendant
Counsel of record